**SIGNED THIS: November 20, 2006**

_____

**MARY P. GORMAN**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | In Bankruptcy |
| MICHAEL A. SANDERS, | ) | |
| | ) | Case No. 06-70463 |
| Debtor. | ) | |

## O P I N I O N

This matter came before the Court for hearing on confirmation of the First Amended Chapter 13 Plan ("Amended Plan") filed by Michael A. Sanders ("Debtor"). The Trustee objects to confirmation of the Amended Plan because of the proposed treatment of one of the claims of State Farm Great Lakes Federal Credit Union ("Credit Union"). The Trustee asserts that the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") which prevent a Chapter 13 debtor from paying less than the full amount due on certain under-secured loans also prevent an over-secured

-1-

creditor such as Credit Union from being paid in full on cross-collateralized claims when the collateral for the claims is a vehicle purchased with loan proceeds within 910 days of the case filing. This Court finds that the Trustee's position cannot be sustained.

On January 24, 2004, the Debtor entered into a Loanliner Open-End Plan Loan Agreement ("Agreement") with Credit Union. The Agreement provided that future loan advances would be made by Credit Union at the request of the Debtor. The Agreement further provided that any collateral pledged to secure any advance under the Agreement would serve as collateral for all advances under the Agreement. On June 15, 2004, the Debtor requested and received a disbursement pursuant to the Agreement from Credit Union in the amount of $10,000 which was used to purchase a 2001 GMC Sonoma truck ("Sonoma"). The Sonoma was pledged as security for the loan.

On August 25, 2004, the Debtor received an additional disbursement from Credit Union of $3,000. As collateral for that loan, Debtor pledged his 1994 Dodge Ram 250 van ("Dodge Ram"). The loan proceeds were not used to purchase the Dodge Ram.

On January 12, 2005, Debtor received a third disbursement under the Agreement in the amount of $16,000. The transaction documents show the collateral for this loan as both the Sonoma and the Dodge Ram.

Debtor filed his Chapter 13 bankruptcy on April 26, 2006. Debtor scheduled both his June, 2004, loan secured by the Sonoma

-2-

and his August, 2004, loan secured by the Dodge Ram as secured claims. His original Chapter 13 Plan proposed to pay both loans as fully secured. Debtor scheduled his January, 2005, loan as unsecured. His original Chapter 13 Plan proposed to pay a 10% dividend to unsecured creditors.

Credit Union objected to the original Chapter 13 Plan and filed three claims setting forth the amounts it claimed due. In its first claim ("Claim #1"), Credit Union states that $5,488.26 remained due on the June, 2004, loan. The claim also states that the value of its collateral - the Sonoma - was $10,711.25. This is the same value placed on the truck by the Debtor on his schedules.

In its second claim ("Claim #2"), Credit Union states that $514.84 remains due on the August, 2005, loan. The Dodge Ram is valued on the claim form at $2,162.25, which also is the value placed on the vehicle by the Debtor on his schedules.

Credit Union's third claim ("Claim #3") relates to the January, 2005, loan. Credit Union claims that the balance due on that loan is $15,263.81. Credit Union asserts that $6,870.40 of Claim #3 is secured by the Sonoma and the Dodge Ram and the balance of $8,393.41 is unsecured. The amount of the secured portion of Claim #3 was calculated by subtracting the amounts claimed due on Claim #1 and Claim #2 from the alleged values of the vehicles securing those claims and using the combined difference as the value of the vehicles available to secure Claim #3.

In response to Credit Union's objection and its three claims,

-3-

Debtor filed his Amended Plan.  Debtor now proposes to pay Claim #1 in a principal amount of $6,208 with interest at 8% per year.  The Debtor proposes to pay Claim #2 in a principal amount of $961, also with annual interest at 8%.  The Debtor provided no explanation as to why he is proposing to pay these claims in principal amounts higher than the actual claims filed.  The Debtor is proposing to bifurcate Claim #3 and pay a secured claim of $6,869.40 with 8% interest and the balance as an unsecured claim with a 15% dividend.

The Trustee filed a timely objection to confirmation of the Amended Plan.  Generally, the Trustee does not object to the proposed treatment of Credit Union's Claim #1 and Claim #2. Notwithstanding the Trustee's general agreement with the treatment of these claims, he has reserved his right to object to the values placed on the vehicles which secure the claims and his right to inquire further into the discrepancies between the amounts of the claims and the amounts proposed to be paid by the Debtor.

The Trustee's objection focuses primarily on the treatment of Claim #3.  The Trustee asserts that, because Claim #1 is a purchase money claim secured by the Sonoma which was purchased within 910 days of the filing of this case for the personal use of the debtor, the so-called "hanging paragraph" of §1325 applies and prevents the value of the Sonoma from being bifurcated and, therefore, prevents any portion of the value of the Sonoma from being used to secure

Claim #3.[1]    Credit  Union  disagrees  with  the  Trustee's
interpretation of the provisions of the "hanging paragraph."  So
does this Court.

The relevant portion of §1325 at issue here is the following:

> For purposes of paragraph (5), section 506 shall not
> apply to a claim described in that paragraph if the
> creditor has a purchase money security interest securing
> the debt that is the subject of the claim, the debt was
> incurred within the 910-day preceding the date of the
> filing of the petition, and the collateral for that debt
> consists of a motor vehicle (as defined in section 30102
> of title 49) acquired for the personal use of the debtor,
> or if collateral for that debt consists of any other
> thing of value, if the debt was incurred during the 1-
> year period preceding that filing.

11 U.S.C. §1325(hanging paragraph).

The relevant portions of §506, which, pursuant to the
provisions of §1325 above no longer apply to certain secured
claims, are the following:

> (a)(1)  An allowed claim of a creditor secured by a
> lien on property in which the estate has an interest, or
> that is subject to setoff under section 553 of this
> title, is a secured claim to the extent of the value of
> such creditor's interest in the estate's interest in such
> property, or to the extent of the amount subject to
> setoff, as the case may be, and is an unsecured claim to
> the extent that the value of such creditor's interest or
> the amount so subject to setoff is less than the amount
> of such allowed claim.  Such value shall be determined in
> light of the purpose of the valuation and of the proposed
> disposition or use of such property, and in conjunction
> with any hearing on such disposition or use or on a plan
> affecting such creditor's interest.

---

[1]
The so-called "hanging paragraph" is the last paragraph of
§1325 and was added by BAPCPA.  Because it was given no
alphabetical or numeric designation as a sub-paragraph, it is
referred to as "hanging."

> (2)  If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing.  With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

11 U.S.C. §506(a)(1) and (2).

Under pre-BAPCPA law, Chapter 13 debtors used the provisions of §506 cited above to strip down liens on vehicles and other personal property through their Chapter 13 plans.  If, for example, a debtor owed a creditor $10,000 and the obligation was secured by a lien on a vehicle worth $6,000, the debtor could generally strip down the creditor's lien to the value of the collateral and pay $6,000 as a secured claim and the balance of $4,000 as an unsecured claim through a Chapter 13 plan.  In re Gonzalez, 295 B.R. 584 (Bankr. N.D. Ill. 2003); In re Johnson, 213 B.R. 552 (Bankr. N.D. Ill. 1997); In re Hernandez, 175 B.R. 962 (N.D. Ill. 1994).

BAPCPA eliminated that option for some debtors filing on or after October 17, 2005.  Under the BAPCPA amendments to §1325, the provisions of §506 can no longer be applied in determining the treatment of certain secured claims.  Accordingly, the same creditor who is owed $10,000 and has a lien on a $6,000 vehicle must now be paid the full $10,000 if the other requirements of the hanging paragraph of §1325 are met and if the debtor desires to

-6-

keep the vehicle.  When §506 does not apply to a particular claim, there is no basis to strip off the unsecured portion of the creditor's lien which secures the claim.  <u>In re Montoya</u>, 341 B.R. 41, 44 (Bankr. D. Utah 2006);  <u>In re Rowley</u>, 348 B.R. 479 (Bankr. S.D. Ill. 2006); <u>In re Johnson</u>, 337 B.R. 269 (Bankr. M.D. N.C. 2006); <u>In re Brown</u>, 346 B.R. 246 (Bankr. M.D. Ga. 2006); <u>In re Brill</u>, 2006 WL 2729006 (Bankr. E.D. Wis. 2006).

Several courts that have reviewed the issue have further extended the impact of the hanging paragraph by finding that there can also be no bifurcation of a creditor's claim into secured and unsecured components when a debtor proposes to surrender collateral rather than pay for it as part of a Chapter 13 plan. The Courts reason that, if a claim is of the type described in the amendments to §1325, then according to the express language of the hanging paragraph, §506 cannot be applied under any circumstance to that claim.  Accordingly, if the debtor cannot bifurcate the claim when he elects to pay the claim, the creditor cannot bifurcate the claim when the collateral is surrendered.  <u>In re Ezell</u>, 338 B.R. 330 (Bankr. E.D. Tenn. 2006); <u>In re Brown</u>, 346 B.R. 868 (Bankr. N.D. Fla. 2006); <u>In re Nicely</u>, 349 B.R. 600 (Bankr. W.D. Mo. 2006). <i>Cf.</i> <u>In re Duke</u>, 345 B.R. 806 (Bankr. W.D. Ky. 2006).

The Trustee here seeks to move the analysis one step further. Because Claim #1 is of the type described in the hanging paragraph, it cannot be subject to any analysis using §506.  Further, because

the Sonoma is collateral for both Claim #1 and Claim #3, the Trustee argues that there is no way to determine the amount of the value of the Sonoma which secures Claim #3.  Therefore, he asserts, no portion of the value of the Sonoma secures Claim #3.

What the Trustee overlooks is that Claim #3 is not the type of claim described in the hanging paragraph and, accordingly, §506 may still be used to analyze Claim #3.  Analyzing Claim #3 by using §506 does not require that §506 also be impermissibly applied to Claim #1.

Claim #3 can be reviewed independently of Claim #1, and the fact that the holder of both claims is the same entity is not relevant to the inquiry.  Credit Union suggests that the only reason that the Trustee has raised his objection is that both claims are held by Credit Union and, accordingly, the Trustee is connecting the two claims in ways that are not appropriate or necessary.  Credit Union asserts that if the junior claim - Claim #3 - was held by an unrelated creditor, the Trustee would not have raised the objection and would not be suggesting that the unrelated creditor's claim could not be treated as secured in part by the Sonoma simply because the senior lien holder was of the type described in the hanging paragraph.  Such a result would jeopardize many junior liens and such a result is not supported by any provision of the Bankruptcy Code.

The analysis under §506 for Claim #3 is straightforward.  The

-8-

"creditor's interest in the estate's interest" in the property which is the collateral must be determined, and the value of that "creditor's interest" must then be compared to the amount owed to determine the amount of the secured claim. 11 U.S.C. §506(a)(1) The estate's interest is determined by calculating the replacement value of the property. 11 U.S.C. §506(a)(2). Here, both the Debtor and Credit Union allege that the appropriate value of the Sonoma is $10,711.25. The creditor's interest for purposes of Claim #3 is a junior interest and, accordingly, the amount of the senior lien must be subtracted from the value of the collateral to obtain the value of the junior interest. Here, the senior lien is claimed to be in the amount of $5,488.26. Thus, the proper methodology would be to subtract the amount of the senior lien from the collateral value and, thereby, reach the result that, as to the Sonoma, Claim #3 is secured in the amount of $5,222.99.

The Dodge Ram secures both Claim #2 and Claim #3. Because Claim #2 is not a purchase money claim, the hanging paragraph does not apply and the Trustee does not contend that bifurcation of the value of the Dodge Ram is impermissible. Accordingly, by following the methodology discussed above with respect to the Dodge Ram, the full secured amount of Claim #3 can be determined.

By reason of the above, the Court finds that the methodology used by Credit Union in computing the secured portion of its Claim #3 is correct. Accordingly, the Trustee's Objection to

Confirmation of the Debtor's First Amended Chapter 13 Plan as it relates to such methodology is denied.  Because the Trustee has raised other issues, and because there appear to be factual disputes regarding the value of the vehicles and the amounts owed to Credit Union, this matter will be set for further hearing.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###